## Case No. 13,614.

### The SUNBEAM.

[Blatchf. Pr. Cas. 638.] [1]

Circuit Court, S. D. New York. May 19, 1863.

PRACTICE IN ADMIRALTY—APPEAL IN PRIZE CASES —STAY OF EXECUTION.

1. In this case the prize property was condemned in the district court, and a sale of it was ordered. The claimant appealed to this court from the decree of condemnation, and then applied to this court to stay the sale, which was in progress, on the ground that the appeal operated to remove the cause into this court, and thereby deprived the district court of jurisdiction to issue an execution or to make a sale of the property under the decree of condemnation in that court. This court ordered the sale to be stayed, and all proceedings under the decree below to be set aside.

2. The 12th section of the act of July 17, 1862 (12 Stat. 608), and the 4th section of the act of March 25, 1862 (12 Stat. 375), considered.

3. There is nothing in either of these acts which changes the general rules of practice that no sale can take place under a decree of condemnation in the district court, duly appealed from: that a decree thus appealed from is not a final decree; and that after the appeal, the cause, with the res, is in this court, and subject to its jurisdiction alone.

4. The first section of the act of March 3, 1863 (12 Stat. 759), respecting sales of prize property condemned notwithstanding an appeal, relates solely to decrees of condemnation to be thereafter made.

Prize.

NELSON, Circuit Justice. This is a motion made by the advocates for the owners and claimants of the steamer Sunbeam and cargo to stay a sale of the property by the United States marshal, which is advertised to be made. It appears from the papers that the vessel and cargo were condemned as prize in the district court on the 19th of January last, and that a venditioni exponas was ordered [Case No. 13,613], which was issued accordingly, and under which the marshal is now proceeding to make the sale. An appeal from the decree below was taken to this court within the time prescribed by law, and duly perfected. It is claimed by the advocates for the claimants that this appeal operates to remove the cause into the appellate court, and thereby deprives the district court of jurisdiction to issue an execution, or to make a sale of the property un-

[1] [Reported by Samuel Blatchford, Esq.]

der the decree of condemnation in that court. That such is the effect of the appeal is admitted, unless the practice is changed by recent acts of congress.

The first act referred to is the twelfth section of the act of July 17, 1862 (12 Stat. 608), entitled "An act for the better government of the navy of the United States." That section provides, among other things, as follows: "And whenever a final decree of condemnation shall have been made, or any interlocutory sale has been ordered, the property shall be sold by the marshal, pursuant to the practice and proceedings in admiralty, and the gross proceeds of such sale shall be forthwith deposited with the assistant treasurer of the United States at or nearest to the place where such sale is made, and the money so deposited shall remain in the treasury of the United States until a final decree of distribution, or until a decree of restitution shall be made, and a certified copy thereof be furnished, upon which the costs of court and the lawful charges and expenses shall be paid, and the balance distributed according to said decree: provided, that the annual salaries of the district attorneys, prize commissioners, and marshals shall, in no cases, be so increased under the several acts for compensation in prize, as to exceed in the aggregate the following sums, and any balance beyond the several sums shall be paid into the treasury, viz: district attorney, $6,000; prize commissioners, $3,000; marshals, $6,000." I see nothing in the words of this provision that is either ambiguous or doubtful. The entire section, which is a long one, relates chiefly to the regulation of the sales of prize property by the marshal, under decrees of condemnation, or by interlocutory orders, and to the costs, charges, and disbursements of the several officers connected with these proceedings in the course of the litigation. The provision relating to decrees of condemnation, or to interlocutory orders of sale, is incidental to the main purpose of the section, to wit, the regulation of the sales, and of the costs, charges, and disbursements. It provides that in the case of a final decree of condemnation, or of an interlocutory order of sale, the property shall be sold by the marshal according to the usual practice in admiralty, and the gross proceeds be deposited with the assistant treasurer, and remain there until a final decree of distribution, or until a decree of restitution. A reference to the fourth section of the act of March 25, 1862 (12 Stat. 375), will help to explain the provision. That section provided that, in case of a final decree of condemnation, the property should be sold by the marshal, and the gross proceeds be deposited in court, and that thereupon the prize commissioners, under the direction of the court, should proceed to take the requisite evidence, and report the same to the court, to the end that a final decree might be made determining what

public ships were entitled to share in the prize, &c.; and it was made the duty of the clerk of the court to transmit to the treasury the moneys so deposited in court, together with a certified copy of the said decree, after deducting from said moneys the costs of court and the charges and expenses, as provided. Now, the twelfth section of the subsequent act of July 17, 1862, provides that the gross proceeds of the sale shall be deposited by the marshal with the assistant treasurer, and shall remain there until a final decree of distribution, or until a decree of restitution, and a certified copy is to be furnished to enable the government to make distribution among the captors. The act of March 25, 1862, and that of the 17th of July following, both of them, speak of a final decree of condemnation before the sale, and of a final decree of distribution after the sale.

I have heretofore had the fourth section of the act of March 25, 1862, before me for consideration, and then held that no sale could take place under a decree of condemnation in the district court duly appealed from; that a decree thus appealed from was not a final decree, within the meaning of the act; and that, after the appeal, the cause, with the res, was in the appellate court, and subject to its jurisdiction alone. There is nothing in the twelfth section of the act of July 17th creating any new rule in this respect. It is supposed that the words, "or until a decree of restitution," after the words, "final decree of distribution," in the twelfth section, are inconsistent with the idea that the term "final decree of condemnation," used in the section, means the ultimate decree in the cause. But the obvious answer is that this phrase, in the connexion in which it is found, refers to the case where the property has been sold on an interlocutory order, and where the final decree is a decree of restitution. As the funds will be in the treasury, a certified copy will be as necessary in the case of restitution as in the case of condemnation; and both decrees must be final decrees. The first part of the clause provides for the case of a sale after the final decree of condemnation; the other, for the case where a sale has taken place before the final decree, and where by it restitution is ordered. I think it quite clear that, under this act of July 17, 1862, as well as under the act of March 25th preceding, no execution can issue, nor any sale of the prize property be lawfully made 'except on an interlocutory order), until after a final decree of condemnation, by which the case is finally disposed of. A decree regularly appealed from is not a final decree, in any sense of the term; and I must assume that the framers of the provision well understood the meaning of the terms used.

The first section of the act of March 3, 1863 (12 Stat. 759), provides "that whenever any prize property shall be condemned, in any district or circuit court, &c., it shall be the duty of the court to order a sale thereof, and

no appeal shall operate to prevent the making or execution of such order." This provision of the act, as well from its terms as from the nature of the subject-matter to which it relates, and upon which it operates, is prospective. In all cases where appeals had already been taken from decrees of the district court, the whole case had passed from its jurisdiction to the appellate court. The res was in that court, and subject to its jurisdiction. There was no longer any valid or operative decree in the court below; and any proceedings affecting the res must take place in the court above. This state of the case must, doubtless, have been well known to the framers of the law, and hence the operation given to the act is entirely prospective.

I am satisfied that the execution in this case, for the reasons above stated, furnishes no authority to the marshal to make a sale of the property in question, and therefore I shall, to prevent its sacrifice, order the sale to be stayed, and all proceedings under the decree below to be set aside.

[The decree of the district court rendered in Case No. 13,613 was affirmed. Id. 13,615.]